[Richmond & Danville Railroad Co. v. Free.]

97  231
114  190
114  377

# Richmond & Danville Railroad Co. v. Free.

*Action by Employe to Recover for Personal Injuries Caused by Negligence of Master.*

1.  *Contributory negligence in failing to use coupling-stick as required by rules of employer.*— If a brakeman in violation of a rule of his employer with which he is familiar, prohibiting coupling except with a stick, or going between cars for that purpose when an engine was attached to them, is injured whilst between cars attempting to couple them without a stick, he is guilty of such contributory negligence as will bar a recovery by him of damages for such injury.

APPEAL from City Court of Birmingham.

Tried before Hon. H. A. SHARPE.

Action by Tobe Free against the Richmond & Danville Railroad Company, for personal injuries alleged to have been caused by its negligence. The complaint contained two counts, the first alleging that the injury was caused by defective draw-heads, in the cars; the second on which trial was had, alleging that the injury was caused by the negligence of the engineer in charge of the engine of defendant. The facts appear in the opinion.

JAMES WEATHERLY, for appellant, contended that the general charge should have been given, citing Cooley on Torts, 70; *R. R. v. Arnold,* 90 Ala. 605; *Jones v. R. R.* 8 So. Rep. 61; *Hissong v. R. R.* 91 Ala. 514; *Prior v. R. R.* 90 Ala. 320.

B. M. ALLEN, for appellee.

HARALSON, J.—There are two counts in the complaint, but the trial was had under the second.

The defendant pleaded the general issue, of not guilty, and a plea of contributory negligence, on the part of the plaintiff. On these, the plaintiff took issue.

It becomes necessary, in view of the charges refused and given by the court, to review the evidence introduced.

It may be stated, as beyond the pale of controversy, that there was a rule of the company, with which the plaintiff was familiar, which prohibited brakeman from coupling and uncoupling cars, except with a stick, and from going in be-

tween them, under any circumstances, for that purpose, when an engine was attached to the cars or train. According to the evidence of the engineer, examined in behalf of the defendant, he saw the plaintiff just before he stepped between the cars, to adjust the pin, for the coupling, but it was impossible for him to see him while between them; that a man by the name of Ed Hunter, was on top of the rear car attached to the engine, giving the signals by which the engine was being moved; that when the witness started back, at first, to make the coupling, he had eight or ten car lengths to back, before reaching the stationary cars to be coupled; that he backed with the engine and cars attached, under full control, and failed to make the coupling with the stationary cars, as he ascertained, from the fact, that plaintiff, the coupler, came out, himself, into view, and gave witness a signal to slack or pull off, a little; that witness, accordingly, pulled away, and stopped, and plaintiff went in to fix the link, which, as witness was told, slipped around the pin, and, afterwards, he received a slow signal from the brakeman on the top of the car, to come back, and he obeyed it, as given; that the draw-heads of the cars coming together, did not more than touch, since he had only a space of about eighteen inches to back, this, the second time; that when an engine pulls away and stops, for a coupling to be arranged, there is no danger for one to go in between the cars, to adjust a pin or link, and the rules of the company forbade a coupling, if the engine was attached to the cars, and when an engine was detached for the purpose of allowing a coupling to be arranged for, it never backed without a signal to do so; and in this instance, he went back in response to a slow signal from the brakeman on the car; that the plaintiff's duty, as a coupler, was to use a stick, and to keep his body and arms out from between the cars, and it was not necessary, if a stick was used, for him to put his body or arm between them.

The brakeman, Ed Hunter, testified, that he was standing at the time, on the top of a car, attached to the engine, to be coupled, and gave the engineer a signal to come back slowly, and he did so; that the plaintiff missed making the coupling, and said to witness, to "slack off," and witness gave the signal, to that effect, to the engineer, who obeyed it, by pulling away and stopping, and plaintiff having fixed the link, said: "let him come back again," and the engineer, obeying a slow signal, to that effect, given by witness, eased back very slowly; that plaintiff entered the link into the coupler, and was working at the pin, having his right hand upon the

car he was coupling to, and his other, between the cars, and the slack of the cars rolled out, as the witness expressed it, and caught plaintiff's arm; that plaintiff was standing between the rails, with his back to the car attached to the engine, as it came back.

The conductor of the train stated that the signals were given by a man on the top of the train, that they were slow signals, and the car was backed at the ordinary slow speed; that the plaintiff was on one side of the track, and he on the other, and the engineer could not see the plaintiff, in the position he was in; that the engine came back at first, moved forward and stopped, and came back again, and that the plaintiff could have used his stick and made the coupling, or adjusted a pin, without using his hand.

The plaintiff testified he had been a brakeman, eight or ten years, and understood the business; that on this occasion, he flagged the engineer to make the coupling; that he threw his hand up, on the stationary car, and knocked the pin in with a stick, in the other hand, to make the coupling, when the engine backed against the stationary car; that he threw out his hand, just at the time, to make the coupling, when the engine fell back heavy, and caught and broke his elbow; that there was room enough between the cars for his ·arm; that when the draw-heads are not driven up, there is room between the cars for a man to stand, but if driven up, one's hand would be mashed; that he knew of no defects in the draw-heads; that he kept his eye on the backing engine and cars, got the pin ready and knew the engine was approaching for the coupling; that the engineer could not see plaintiff, and the signals were given by the brakeman on top of train; that plaintiff stood outside the rails when cars came together; he had instructions to use a coupling stick, and he had one; that he stepped on the track when brakeman slowed the engineer at first, but stood outside, when cars came together, and when the link slipped round the pin, he put one hand on car in front, as he before stated, and reached over with the other to knock the pin in, with his stick, when the engine jammed back against the car, and caught his arm; the cars were half a yard apart, when plaintiff reached, to guide the link, and the engine came back slowly, when he was guiding the link; and it was after the draw-heads came together, he put his hand in to guide the pin; and thinking there was no danger, he reached under with his left hand, holding his stick, his body· being between, but below the corner of the cars, and that was the way it caught his elbow; that when he attempted to make the coupling, the

train was moving at ordinary speed, but it just came clean on back, driving up the draw-heads, the engineer receiving his signals from man on top, and the last he saw of this brakeman, he was giving the slow down signal to the engineer; that these were all the engineer had to go by, and he slowed down in response to the signals.

From this *resume* of the facts, it appears, the plaintiff was not a raw hand at the business of coupling cars, but having been at it, eight or ten years, was familiar with it, and knew its attendant dangers; that the company had a rule, familiar to the plaintiff, against brakeman using their hands and placing their bodies and arms between cars, when a coupling was to be made, and requiring them to use a stick for the purpose; that in this instance, the coupling could have been done as well with a stick, as with the arm and hand, without the stick, and there was no necessity for the exposure to which plaintiff subjected himself, in attempting to make the coupling. That there was a great risk in doing so, appears from the necessity of a rule on the subject,—adopted we must presume, to avoid the dangers of such a practice,—and, from the injury the plaintiff received, in consequence of a violation of the rule. It further appears, the act of the plaintiff in placing his arm between the cars, was a voluntary act on his part. No employee of the company ordered or advised him to do it. It was not his duty to do so, but on the contrary, it was his duty not to have done it. He was fully cognizant of all that was going on. He knew the engineer did not see him, for he says so, and it is morally certain, the brakeman on top of the car, who was giving the signals to the engineer, did not see him. He alone, so far as appears, saw the situation of affairs at the coupling, understood and acted for himself, believing, as he stated, that there was no danger in placing his arm in the exposed place. He misjudged the peril. Reason, common prudence, the rules of the company, all suggested and warned him against the hazard he was assuming, but together, were ineffectual to restrain him. He had been at the business long enough to have become careless, in assuming risks such as cautious persons are careful to shun, as is evident from his conduct in this instance. We do not think the company should be made to pay for the negligence of the plaintiff which contributed so directly to his injury. The general charge requested by the defendant, should have been given.

Reversed and remanded.